UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | CASE NO. 11-43051-BKC-RAM |
| JORGE MORERA, | CHAPTER 7 |
| Debtor. | |

_____/

| | |
|---|---|
| MARCIA T. DUNN, as Chapter 7 Trustee for the bankruptcy estate of Jorge Morera, | ADV. NO. 12-01848-RAM |
| Plaintiff, | |
| v. | |
| JORGE MORERA, individually and as Co-Trustee of the Morera Living Trust, GEMMA MORERA, individually and as Co-Trustee of the Morera Living Trust, and the MORERA LIVING TRUST, | |
| Defendants. | |

_____/

**AMENDED COMPLAINT TO AVOID AND RECOVER
FRAUDULENT TRANSFERS, OBJECTING TO CLAIMS
OF EXEMPTIONS AND TO IMPOSE AN EQUITABLE LIEN**

COMES NOW, Marcia T. Dunn, the Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate of Jorge Morera (the "Debtor"), by and through undersigned counsel and pursuant to Fed. R. Bankr. P. 7001, hereby files this Amended Complaint to Avoid and Recover Fraudulent Transfers, Objecting to Claims of Exemptions and to Impose an Equitable Lien and in support thereof states as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1.      On November 30, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code").

2.      Marcia T. Dunn, the Plaintiff, is the duly appointed and acting Chapter 7 Trustee for the Debtor's bankruptcy estate.

3.      Jorge Morera, the Debtor, is an individual that resides in Miami-Dade County Florida and is otherwise *sui juris*.

4.      Gemma Morera ("Gemma") is the Debtor's wife and is an individual that resides in Miami-Dade County Florida and is otherwise *sui juris*.

5.      The Morera Living Trust (the "Trust") is a revocable living trust that was settled by the Debtor and Gemma on May 28, 2009.

6.      The Debtor and Gemma are the co-trustees of the Trust.

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

a.  **BACKGROUND**

9.      The Debtor is a former real estate developer that conducted business throughout the state of Florida under the name of Pointe Developers, Inc ("Pointe").

10.     The Debtor owned his one-third interest in Pointe through a Florida Limited Liability Company, Ryke Investments, LLC ("Ryke").

11.     Between 2004 and 2011, Pointe owned numerous real estate investments in the South and Central Florida markets.

12.     Pointe is the developer of condominium projects such as Town n' Country Pointe, University Pointe and Cypress Pointe.

13.     Pointe was also the developer for commercial real estate projects such as Tamiami Pointe, Hialeah Pointe, Minorca Pointe and South River Pointe.

**b.  THE DEBTORS HOMESTEAD**

14.     On or about December 28, 2000, the Debtor and Gemma purchased their principal residence located at 1445 Palancia Ave. Coral Gables, FL (the "Homestead") for $290,000.

15.     The Homestead consists of 3,650 square foot single family residence situated on a 12,500 square foot parcel.  The Homestead is situated a half-block west of the Riviera Country Club golf course and just south of the Biltmore Golf Course.

16.     To finance the purchase of the Homestead the Debtor and Gemma obtained a loan in the amount of $232,000 from Wells Fargo Home Mortgage, Inc. secured by a first mortgage on the Homestead.

17.     Upon information and belief, in or about December 20, 2001, the Debtor made $250,000 in construction improvements, nearly doubling the value of the Homestead.

18.     On January 10, 2002, the Debtor obtained a $50,000 second mortgage with Homebanc Mortgage Corp.

19.     On January 10, 2003, the Debtor refinanced the principal balance of the first mortgage with Homebanc Mortgage Corp. in the amount of $550,000.

20.     Upon information and belief, the Homebanc first mortgage was subsequently assigned to Chase Bank.

21.     On August 23, 2007, the Debtor obtained a home equity line of credit with Bank of America for $500,000, secured by a second mortgage on the Homestead.

22.     On the Petition Date, the Debtor filed his Bankruptcy Schedule A reflecting that the value of the Homestead is $755,287 encumbered by mortgages totaling $431,214 leaving at least a $324,073 equity cushion which the Debtor is claiming as exempt under the Florida homestead laws and as a tenancy by the entireties.

23.     The Trustee believes that the equity cushion is understated on the Debtor's schedules.

c. **THE DEBTORS FINANCIAL HISTORY**

1.     **The Debtor's 2006 Income Taxes**

24.     On or about September 12, 2007, the Debtor and Gemma, filed an IRS Form 1040 tax return for 2006 reflecting $3,190,952 in income which included: (i) $285,969 in wages; (ii) $2,356,614 in capital gains; and (iii) $515,597 in real estate rental income and business income.

25.     According to the Debtor, the overwhelming majority of this income was derived from his ownership of Ryke and other investments and real estate holdings with Pointe.

26.     In total the Debtor paid $616,677 in income taxes to the Internal Revenue Service ("IRS") for his 2006 income.

27.     In late 2007, the real estate market in Florida dramatically declined.

28.     According to the Debtor, Pointe's real estate projects came to a complete halt because of market conditions and the unavailability of credit.

29.     The Debtor began to suffer severe business losses immediately after the decline in the real estate market.

30.     By April 2008, the Debtor had in excess of $47.8 million in contingent liabilities on account of various bank loans that the Debtor personally guaranteed for the business ventures and real estate projects of Ryke and Pointe.

2.     **The Debtor's 2007 Income Taxes**

31.     In or about the middle of 2008, the Debtor filed a Net Operating Loss ("NOL") carry back with the IRS.

32.     Specifically, on or about July 2, 2008, the Debtor and Gemma, filed an IRS Form 1040 tax return for 2007 claiming $1,885,288 in losses attributable to the Debtor's ownership of Ryke.

33.     The 2007 tax return reflects the following income: (i) $122,146 in wages and (ii) $12,729 in interest income.

34.     On August 8, 2008, the IRS issued a check to the Debtor and Gemma for a 2007 tax refund in the total amount of $33,415.

35.     On August 14, 2008, the Debtor deposited the $33,415 tax refund into a joint account with Gemma at Wachovia Bank.

36.     Less than a week later, the Debtor transferred $18,000 from that same joint account at Wachovia Bank to pay down the equity of line credit on the Debtor's Homestead.

37.     On September 12, 2008, the Debtor and Gemma received two additional checks from the IRS for $400,187 and $3,968 on account of the NOL carry back losses applied to the Debtor's income tax payments in 2006.

38.     Just a few days later, on September 18, 2008, the Debtor deposited the two tax refund checks totaling $404,155 into a joint account with Gemma at Wachovia Bank.

39.     On September 29, 2008, the Debtor transferred $403,000 from the joint account at Wachovia Bank to pay down the equity line of credit secured by the Debtor's Homestead.

**3.      The Debtor's 2008 Income Taxes**

40.     In May 2009, the Debtor met with an asset protection attorney that advised the Debtor in connection with estate and asset protection planning and prepared the Trust for the Debtor.

41.      According to the Debtor, his attorney counseled him to transfer 50% of his interest in Ryke to his wife Gemma (the "Ryke Transfer").

42.    According to the Debtor 50% of his interest in Ryke was transferred to his wife for no value or consideration and no money exchanged hands during the transaction.

43.    Shortly after creating the Trust, on November 3, 2009, the Debtor stipulated to a $2.8 million judgment in favor of US Acquisition, LLC one of his numerous creditors holding claims against him.

44.    On or about November 2, 2009, the Debtor and Gemma, filed an IRS Form 1040 tax return for 2008 reflecting an additional $1,319,945 in business losses from Ryke and Pointe.

45.    The 2008 tax return reflects (i) $210,706 in wages and (ii) $2,509 in interest income.  Again the Debtor elected to apply the NOL carry back losses for 2008 to the income tax payments he made to the IRS in 2006.

46.    On December 14, 2009, the Debtor received two additional refunds from the IRS for $53,841 and $45,517 for the total amount of $99,358 for further NOL carry back losses applied to the 2006 taxes paid by the Debtor.

47.    On December 19, 2009, the Debtor deposited the two IRS refunds totaling $99,358 into an account in the name of the Trust.

48.    On December 25, 2009, the Debtor received a 2008 tax refund for $47,197.25 which the Debtor deposited into an account in the name of the Trust.

49.    On May 28, 2010, the Debtor also received another $65,415 tax refund from the IRS on account of further NOL carry back losses applied to the taxes paid by the Debtor in 2006. The Debtor deposited the $65,415 tax refund to an account owned by the Trust.

**4.    The Debtor's 2009 Income Taxes**

50.    On October 11, 2010, the Debtor and Gemma filed a an IRS Form 1040 tax return for 2009.

51.     The 2009 tax return reflects the following income: (i) $170,798 in wages and salary and (ii) $1,630 in interest income.

52.     On the 2009 tax return, the Debtor reported $328,222 in business losses which are primarily attributable to the Debtor's losses with Ryke and losses incurred in connection with 4 condominium units owned by the Debtor.

53.     As a result of these losses the Debtor received a tax refund in the total amount of $34,959 for 2009 taxes.

54.     On December 2, 2010, the Debtor deposited the 2009 tax refund into an account in the name of the Trust.

55.     On February 2, 2011, the Debtor transferred the total sum of $140,000 out of the trust account to Bank of America to pay down the equity line of credit on his Homestead.

**d.  THE TRANSFERS AT ISSUE**

56.     By this adversary proceeding the Trustee seeks to avoid and recover the following Transfers.

57.     First, as a preliminary matter, the Trustee seeks to avoid and recover the Ryke Transfer to Gemma.

58.     Second, the Trustee seeks to avoid and recover the transfers of the Debtor's tax refunds into one or more joint accounts with Gemma as follows:

| From | Date | Amount | Deposit Account | Payee |
|------|------|--------|-----------------|-------|
| U.S. Dept of Treasury | 8-18-08 | $33,751 | xxxxx1438 | Jorge/Gemma |
| U.S. Dept of Treasury | 9-18-08 | $400,187 | xxxxx1726 | Jorge/Gemma |
| U.S. Dept of Treasury | 9-18-08 | $3,968 | xxxxx1726 | Jorge/Gemma |
| | TOTAL: | $437,906 | | |

(collectively, the "TBE Transfers").

59.     The Trustee seeks to avoid and recover the transfers of the Debtor's tax refunds from his joint account with Gemma that were used to pay down the Debtor's equity line of credit with Bank of America as follows:

| From | Date | Amount | Withdrawal Account | Payee |
|------|------|--------|--------------------|-------|
| Jorge/Gemma | 8- 20-08 | $18,000 | xxxxx1428 | B of A |
| Jorge/Gemma | 9-29-08 | $403,000 | xxxxx1726 | B of A |
| | TOTAL: | $421,000 | | |

(collectively, the "Homestead Transfers").

60.     The Trustee also seeks to avoid and recover each of the transfers of the Debtor's tax refunds into the Trust as follows:

| From | Date | Amount | Deposit Account | Payee |
|------|------|--------|-----------------|-------|
| U.S. Dept of Treasury | 12-19-09 | $53,841 | xxxxx0021 | Trust |
| U.S. Dept of Treasury | 12-19-09 | $45,517 | xxxxx0021 | Trust |
| U.S. Dept of Treasury | 12-29-09 | $47,197 | xxxxx0021 | Trust |
| U.S. Dept of Treasury | 6-7-10 | $65,415 | xxxxx0021 | Trust |
| U.S. Dept of Treasury | 12-2-10 | $34,959 | xxxxx0034 | Trust |
| | TOTAL | $246,929 | | |

(collectively, the "Trust Transfers").

61.     Finally, the Trustee seeks to avoid and recover the transfer of the Debtor's tax refunds from the Trust to pay down the equity line of credit with Bank of America as follows:

| From | Date | Amount | Withdrawal Account | Payee |
|------|------|--------|--------------------|-------|
| Trust | 2-2-11 | $140,000 | xxxxxx021 | B of A |
| | TOTAL | $140,000 | | |

(the "Trust Homestead Transfer").

62.     All conditions precedent to filing this action have either been satisfied or otherwise waived.

**COUNT I –**
**AVOID AND RECOVER FRAUDULENT TRANSFERS**
**11 U.S.C. §§ 544 and 550 and Fla. Stat. §§ 726.105 and 726.106**
**(Against Gemma Morera for the Ryke Transfer)**

63.     Plaintiff re-alleges and repeats paragraphs 1 through 62 as if fully set forth herein.

64.     This is an action to avoid and recover a fraudulent transfer pursuant Sections 544 and 550 of the Bankruptcy Code and pursuant to Sections 726.105 and 726.106 of the Florida Statutes.

65.     The Trustee may avoid the Ryke Transfer pursuant to Fla. Stat. § 726.105(1)(a) because it was made with the actual intent to hinder, delay or defraud the Debtor's creditors.

66.     The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)     the Ryke Transfer was to an insider;

(b)     the Debtor retained custody and control of Ryke after the Ryke Transfer;

(c)     prior to the Ryke Transfer the Debtor had been threatened with litigation by his many creditors;

(d)     the Ryke Transfer was made for no consideration or value;

(e)     the Debtor was insolvent at the time that the Ryke Transfer was made; and

(f)     the Ryke Transfer occurred shortly before or shortly after a substantial debt was incurred.

67.     The Trustee may also avoid the Ryke Transfer to Gemma pursuant to Fla. Stat. § 726.105(1)(b), because the Debtor received less than reasonably equivalent value for the transfer, and the Debtor:

(a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

(b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

68. The Trustee may also avoid the Ryke Transfer pursuant to Fla. Stat. § 726.106(1) because the Debtor received less than reasonably equivalent value in exchange for the Ryke Transfer and the Debtor was insolvent at the time of the Ryke Transfer.

69. To the extent the Ryke Transfer is avoided under Section 544 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from Gemma, who is either the initial transferee of the Ryke Transfer, the person for whose benefit the Ryke Transfer was made, or the immediate or mediate transferee of such initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment against Gemma Morera as follows: (i) determining that the Ryke Transfer is avoidable; (ii) determining that the Ryke Transfer is recoverable; (iii) requiring Gemma Morera to turnover her 50% stock interest in Ryke to the Trustee; and (iv) granting such other relief that is just and proper.

### COUNT II –
### AVOID AND RECOVER FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 544 and 550 and Fla. Stat. §§ 726.105 and 726.106
### (Against Gemma Morera for the TBE Transfers)

70. Plaintiff re-alleges and repeats paragraphs 1 through 13, 24 through 38, 56, 58 and 62 as if fully set forth herein.

71. This is an action to avoid and recover fraudulent transfers pursuant Sections 544 and 550 of the Bankruptcy Code and pursuant to Sections 726.105 and 726.106 of the Florida Statutes.

72.     The Trustee may avoid the TBE Transfers pursuant to Fla. Stat. § 726.105(1)(a) because they were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

73.     The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)     the TBE Transfers were to an insider;

(b)     the Debtor retained custody and control of the joint accounts after the TBE Transfers;

(c)     prior to the TBE Transfers the Debtor had been threatened with litigation by his many creditors;

(d)     the TBE Transfers were made for no consideration or value;

(e)     the Debtor was insolvent at the time that the TBE Transfers were made; and

(f)     the TBE Transfers occurred shortly before or shortly after a substantial debt was incurred.

74.     The Trustee may also avoid the TBE Transfers pursuant to Fla. Stat. § 726.105(1)(b) because the Debtor received less than reasonably equivalent value for the TBE Transfers, and the Debtor:

(a)     was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

(b)     intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

75.     The Trustee may also avoid the TBE Transfers pursuant to Fla. Stat. § 726.106(1) because the Debtor received less than reasonably equivalent value in exchange for the TBE Transfers and the Debtor was insolvent at the time of the TBE Transfers.

76.    To the extent the TBE Transfers are avoided under Section 544 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from Gemma who is either the initial transferee of the TBE Transfers, the person for whose benefit TBE Transfers were made, or the immediate or mediate transferee of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment against Gemma Morera as follows: (i) determining that the TBE Transfers are avoidable; (ii) determining that the TBE Transfers are recoverable; (iii) requiring Gemma Morera to return the TBE Transfers to the Trustee plus post judgment interest; and (iv) granting such other relief that is just and proper.

### COUNT III –
### AVOID AND RECOVER FRAUDULENT ASSET CONVERSION
### 11 U.S.C. §§ 544 and 550 and Fla. Stat. § 222.30
### (Against Jorge Morera and Gemma Morera for the TBE Transfers)

77.    Plaintiff re-alleges and repeats paragraphs 1 through 13, 24 through 38, 56, 58 and 62 as if fully set forth herein.

78.    This is an action to avoid and recover fraudulent asset conversions under Sections 544 and 550 of the Bankruptcy Code and pursuant to Section 222.30 the Florida Statutes.

79.    The Trustee may avoid the TBE Transfers as fraudulent asset conversions pursuant to Fla. Stat. § 222.30 because they were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

80.    The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)    the TBE Transfers were for the benefit of an insider;

(b)    the Debtor retained custody and control of the joint accounts after the TBE Transfers;

(c)        prior to the TBE Transfers the Debtor had been threatened with litigation by his many creditors;

(d)        the Debtor was insolvent at the time that the TBE Transfers were made; and

(e)        the TBE Transfers occurred shortly before or shortly after a substantial debt was incurred.

81.        To the extent the TBE Transfers are avoided under Section 544 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from the Debtor and Gemma who are either the initial transferees of the TBE Transfers, the people for whose benefit the TBE Transfers were made, or the immediate or mediate transferees of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment as follows: (i) determining that the TBE Transfers are fraudulent asset conversions; (ii) determining the funds transferred to the joint accounts pursuant to the TBE Transfers are not exempt by Florida's tenancy by the entireties laws (iii) determining that the TBE Transfers are avoidable by the Trustee; (iv) determining that the TBE Transfers are recoverable by the Trustee; and (v) granting such other and further relief that is just and proper.

## COUNT IV –
## AVOID AND RECOVER FRAUDULENT TRANSFERS
## 11 U.S.C. §§ 544 and 550 and Fla. Stat. §§ 726.105 and 726.106
### (Against Gemma Morera for the Homestead Transfers)

82.        Plaintiff re-alleges and repeats paragraphs 1 through 39, 56, 59 and 62 as if fully set forth herein.

83.        This is an action to avoid and recover fraudulent transfers pursuant Sections 544 and 550 of the Bankruptcy Code and pursuant to Sections 726.105 and 726.106 of the Florida Statutes.

84.     The Trustee may avoid the Homestead Transfers pursuant to Fla. Stat. § 726.105(1)(a) because they were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

85.     The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)     the Homestead Transfers were for the benefit of an insider;

(b)     the Debtor retained custody and control of the Homestead after the Homestead Transfers;

(c)     prior to the Homestead Transfers the Debtor had been threatened with litigation by his many creditors;

(d)     the Debtor was insolvent at the time that the Homestead Transfers were made; and

(e)     the Homestead Transfers occurred shortly before or shortly after a substantial debt was incurred.

86.     The Trustee may also avoid the Homestead Transfers pursuant to Fla. Stat. § 726.105(1)(b) because the Debtor received less than reasonably equivalent value for the Homestead Transfers, and the Debtor:

(a)     was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

(b)     intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

87.    The Trustee may also avoid the Homestead Transfers pursuant to Fla. Stat. § 726.106(1) because the Debtor received less than reasonably equivalent value in exchange for the Homestead Transfers and the Debtor was insolvent at the time of the Homestead Transfers.

88.    To the extent the Homestead Transfers are avoided under Section 544 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from Gemma who is either the initial transferee of the Homestead Transfers, the person for whose benefit the Homestead Transfers were made, or the immediate or mediate transferee of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment against Gemma Morera as follows: (i) determining that the Homestead Transfers are avoidable; (ii) determining that the Homestead Transfers are recoverable; (iii) requiring Gemma Morera to return the Homestead Transfers to the Trustee plus post judgment interest; and (iv) granting such other relief that is just and proper.

## COUNT V –
### AVOID AND RECOVER FRAUDULENT ASSET CONVERSION
### 11 U.S.C. §§ 544 and 550 and Fla. Stat. § 222.30
### (Against Gemma Morera and Jorge Morera for the Homestead Transfers)

89.    Plaintiff re-alleges and repeats paragraphs 1 through 39, 56, 59 and 62 as if fully set forth herein.

90.    This is an action to avoid and recover fraudulent asset conversions under Sections 544 and 550 of the Bankruptcy Code and pursuant to Section 222.30 the Florida Statutes.

91.    The Trustee may avoid the Homestead Transfers as fraudulent asset conversions pursuant to Fla. Stat. § 222.30 because they were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

92.    The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)      the Homestead Transfers were for the benefit of an insider;

(b)      the Debtor retained custody and control of the Homestead after the Homestead Transfers;

(c)      prior to the Homestead Transfers the Debtor had been threatened with litigation by his many creditors;

(d)      the Debtor was insolvent at the time that the Homestead Transfers were made; and

(e)      the Homestead Transfers occurred shortly before or shortly after a substantial debt was incurred.

93.      To the extent the TBE Transfers are avoided under Section 544 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from the Debtor and Gemma who are either the initial transferees of the TBE Transfers, the people for whose benefit the TBE Transfers were made, or the immediate or mediate transferees of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment as follows: (i) determining that the Homestead Transfers are fraudulent asset conversions; (ii) determining the Homestead is not exempt by Florida's homestead exemption or tenancy by the entireties laws to the extent of the Homestead Transfers; (iii) determining that the Homestead Transfers are avoidable by the Trustee; (iv) determining that the Homestead Transfers are recoverable by the Trustee; (vi) requiring the debtor to turn over the Homestead to the Trustee; and (vii) granting such other and further relief that is just and proper.

## COUNT VI –
## OBJECTION TO HOMESTEAD EXEMPTION
## 11 U.S.C. § 522(o)(4)
### (Against Jorge Morera and Gemma Morera)

94.     Plaintiff re-alleges and repeats paragraphs 1 through 39, 56, 59 and 62 as if fully set forth herein.

95.     This is an action pursuant to 11 U.S.C. § 522(o) objecting to the Debtor's and Gemma's homestead exemptions.

96.     The Debtor and Gemma are claiming a homestead exemption for the Homestead.

97.     Gemma is a dependant of the Debtor.

98.     The value of the exemption on the Homestead claimed by the Debtor and Gemma must be reduced by the amount of the Homestead Transfers which the Debtor made with the actual intent to hinder, delay or defraud his creditors.

99.     The Debtor's intent to defraud to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)     the Homestead Transfers were for the benefit of an insider;

(b)     the Debtor retained custody and control of the Homestead after the Homestead Transfers;

(c)     prior to the Homestead Transfers the Debtor had been threatened with suit by his many creditors;

(d)     the Debtor was insolvent at the time that the Homestead Transfers were made; and

(e)     the Homestead Transfers occurred shortly before or shortly after a substantial debt was incurred.

100.    The Homestead Transfers were not subject to an exemption at the time that they were made

WHEREFORE, the Trustee respectfully requests the entry of judgment as follows: (i) sustaining the Trustee's objection; (ii) reducing the Debtor's homestead exemption by the amount of the Homestead Transfers; (iii) reducing the amount of Gemma's homestead exemption by the amount of the Homestead Transfers; (iv) determining that the equity available in the Homestead is not exempt to the extent of the Homestead Transfers; (v) directing the Debtor and Gemma to turn over to the Homestead to the Trustee; and (vi) granting such other and further relief that is just and proper.

**COUNT VII –**
**AVOID AND RECOVER FRAUDULENT TRANSFERS**
**11 U.S.C. §§ 544 and 550 and Fla. Stat. §§ 726.105 and 726.106**
**(All Defendants for the Trust Transfers)**

101.    Plaintiff re-alleges and repeats paragraphs 1 through 13, 24 through 33, 40 through 54, 56, 60 and 62 as if fully set forth herein.

102.    This is an action to avoid and recover fraudulent transfers pursuant Sections 544 and 550 of the Bankruptcy Code and pursuant to Sections 726.105 and 726.106 of the Florida Statutes.

103.    The Trustee may avoid the Trust Transfers pursuant to Fla. Stat. § 726.105(1)(a) because they were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

104.    The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)    the Trust Transfers were to or for the benefit of an insider;

(b)    the Debtor retained custody and control of the Trust after the Trust Transfers;

(c)    prior to the Trust Transfers the Debtor had been threatened with suit by his many creditors;

(d)    the Trust Transfers were made to the Trust for no consideration or value;

(e)    the Debtor was insolvent at the time that the Trust Transfers were made; and

(f)      the Trust Transfers occurred shortly before or shortly after a substantial debt was incurred.

105.    The Trustee may also avoid the Trust Transfers pursuant to Fla. Stat. § 726.105(1)(b) because the Debtor received less than reasonably equivalent value for the Trust Transfers, and the Debtor:

(a)      was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

(b)      intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

106.    The Trustee may also avoid the Trust Transfers pursuant to Fla. Stat. § 726.106(1) because the Debtor received less than reasonably equivalent value in exchange for the Trust Transfers and the Debtor was insolvent at the time of Trust Transfers.

107.    To the extent the Trust Transfers are avoided under Section 544 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from the Defendants which are either the initial transferees of the Trust Transfers, the individuals or entities for whose benefit the Trust Transfers were made, or the immediate or mediate transferees of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment against the Defendants as follows: (i) determining that the Trust Transfers are avoidable; (ii) determining that the Trust Transfers are recoverable; (iii) requiring Defendants to return the Trust Transfers to the Trustee plus post judgment interest; and (iv) granting such other relief that is just and proper.

## COUNT VIII –
## AVOID AND RECOVER FRAUDULENT TRANSFERS
## 11 U.S.C. §§ 548 and 550
### (Against the Defendants for the Trust Transfers)

108.     Plaintiff re-alleges and repeats paragraphs 1 through 13, 24 through 33, 40 through 54, 56, 60 and 62 as if fully set forth herein.

109.     This is an action to avoid and recover fraudulent transfers pursuant Sections 548 and 550 of the Bankruptcy Code.

110.     The Trust Transfers are avoidable by the Trustee because the Debtor made such transfers with the intent to hinder, delay or defraud his creditors.

111.     The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)     the Trust Transfers were to or for the benefit of an insider;

(b)     the Debtor retained custody and control of the Trust after the Trust Transfers;

(c)     prior to the Trust Transfers the Debtor had been threatened with suit by his many creditors;

(d)     the Trust Transfers were made to the Trust for no consideration or value;

(e)     the Debtor was insolvent at the time that the Trust Transfers were made; and

(f)     the Trust Transfers occurred shortly before or shortly after a substantial debt was incurred.

112.     The Trustee may also avoid the Trust Transfers because the Debtor received less than reasonably equivalent value for the Trust Transfers; and

(a)     was insolvent on the date that the Trust Transfers were made or became insolvent as a result of the Trust Transfers;

(b)     was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with him was unreasonably small capital; or

(c)        intended to incur, or believed that he  would incur, debts that would be beyond his ability to pay as such debts matured.

113.    To the extent the Trust Transfers are avoided under Section 548 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from the Defendants which are either the initial transferees of the Trust Transfers, the individuals or entities for whose benefit the Trust Transfers were made, or the immediate or mediate transferees of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment against the Defendants as follows: (i) determining that the Trust Transfers are avoidable; (ii) determining that the Trust Transfers are recoverable; (iii) requiring Defendants to return the Trust Transfers to the Trustee plus post judgment interest; and (iv) granting such other relief that is just and proper.

**COUNT IX –**
**AVOID AND RECOVER FRAUDULENT ASSET CONVERSION**
**11 U.S.C. §§ 544 and 550 and Fla. Stat. § 222.30**
**(Against Jorge Morera and Gemma Morera for the Trust Transfers)**

114.    Plaintiff re-alleges and repeats paragraphs 1 through 13, 24 through 33, 40 through 54, 56, 60 and 62 as if fully set forth herein.

115.    This is an action to avoid and recover fraudulent asset conversions under Sections 544 and 550 of the Bankruptcy Code and pursuant to Section 222.30 the Florida Statutes.

116.    The Trustee may avoid the Trust Transfers as fraudulent asset conversions pursuant to Fla. Stat. § 222.30 because they were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

117.    The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)        the Trust Transfers were to or for the benefit of an insider;

(b)        the Debtor retained custody and control of the Trust after the Trust Transfers;

(c)     prior to the Trust Transfers the Debtor had been threatened with litigation by his many creditors;

(d)     the Debtor was insolvent at the time that the Trust Transfers were made; and

(e)     the Trust Transfers occurred shortly before or shortly after a substantial debt was incurred.

118.    To the extent the Trust Transfers are avoided under Section 544 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from the Debtor and Gemma who are either the initial transferee of the Trust Transfers, the people for whose benefit the Trust Transfers was made, or the immediate or mediate transferee of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment as follows: (i) determining that the Trust Transfers are fraudulent asset conversions; (ii) determining the funds transferred to the Trust pursuant to the Trust Transfers are not exempt by Florida's tenancy by the entireties laws (iii) determining that the Trust Transfers are avoidable by the Trustee; (iv) determining that the Trust Transfers are recoverable by the Trustee; and (v) granting such other and further relief that is just and proper.

**COUNT X –**
**AVOID AND RECOVER FRAUDULENT TRANSFERS**
**11 U.S.C. §§ 544 and 550 and Fla. Stat. §§ 726.105 and 726.106**
**(Against Gemma Morera for the Trust Homestead Transfer)**

119.    Plaintiff re-alleges and repeats paragraphs 1 through 33, 40 through 43, 50 through 56, 61 and 62 as if fully set forth herein.

120.    This is an action to avoid and recover a fraudulent transfer pursuant Sections 544 and 550 of the Bankruptcy Code and pursuant to Sections 726.105 and 726.106 of the Florida Statutes.

121.    The Trustee may avoid the Trust Homestead Transfer pursuant to Fla. Stat. § 726.105(1)(a) because it was made with the actual intent to hinder, delay or defraud the Debtor's creditors.

122.    The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)    the Trust Homestead Transfer was for the benefit of an insider;

(b)    the Debtor retained custody and control of the Homestead after the Trust Homestead Transfer;

(c)    prior to the Trust Homestead Transfer the Debtor had been threatened with litigation by his many creditors;

(d)    the Debtor was insolvent at the time that the Trust Homestead Transfer was made; and

(e)    the Trust Homestead Transfer occurred shortly before or shortly after a substantial debt was incurred.

123.    The Trustee may also avoid the Trust Homestead Transfer pursuant to Fla. Stat. § 726.105(1)(b) because the Debtor received less than reasonably equivalent value for the Trust Homestead Transfer, and the Debtor:

(a)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

(b)    intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

124.    The Trustee may also avoid the Trust Homestead Transfer pursuant to Fla. Stat. § 726.106(1) because the Debtor received less than reasonably equivalent value in exchange for

the Trust Homestead Transfer and the Debtor was insolvent at the time of the Trust Homestead

Transfer was made.

125.    To the extent the Trust Homestead Transfer is avoided under Section 544 of the

Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property

transferred, or the value of such property, from Gemma who is either the initial transferee of the

Trust Homestead Transfer, the person for whose benefit the Trust Homestead Transfer was

made, or the immediate or mediate transferee of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment against Gemma Morera as

follows: (i) determining that the Trust Homestead Transfer is avoidable; (ii) determining that the

Trust Homestead Transfer is recoverable; (iii) requiring Gemma Morera to return the Trust

Homestead Transfer to the Trustee plus post judgment interest; and (iv) granting such other relief

that is just and proper.

### COUNT XI –
### AVOID AND RECOVER FRAUDULENT TRANSFERS
### 11 U.S.C. §§ 548 and 550
### (Against Gemma Morera for the Trust Homestead Transfer)

126.    Plaintiff re-alleges and repeats paragraphs 1 through 33, 40 through 43, 50

through 56, 61 and 62 as if fully set forth herein.

127.    This is an action to avoid and recover a fraudulent transfer pursuant Sections 548

and 550 of the Bankruptcy Code.

128.    The Trust Homestead Transfer is avoidable by the Trustee because the Debtor

made such transfers with the intent to hinder, delay or defraud his creditors.

129.    The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced,

by among other things:

(a)      the Trust Homestead Transfer was for the benefit of an insider;

(b)     the Debtor retained custody and control of the Homestead after the Trust Homestead Transfer;

(c)     prior to the Trust Homestead Transfer the Debtor had been threatened with litigation by his many creditors;

(d)     the Debtor was insolvent at the time that the Trust Homestead Transfer was made; and

(e)     the Trust Homestead Transfer occurred shortly before or shortly after a substantial debt was incurred.

130.    The Trustee may also avoid the Trust Homestead Transfer because the Debtor received less than reasonably equivalent value for the Trust Homestead Transfer; and

(a)     was insolvent on the date of that the Trust Homestead Transfer was made or became insolvent as a result of the Trust Homestead Transfer;

(b)     was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with him was unreasonably small capital; or

(c)     intended to incur, or believed that he  would incur, debts that would be beyond his ability to pay as such debts matured.

131.    To the extent the Trust Homestead Transfer is avoided under Section 548 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from Gemma who is either the initial transferee of the Trust Homestead Transfer, the person for whose benefit the Trust Homestead Transfer was made, or the immediate or mediate transferee of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment against Gemma Morera as follows: (i) determining that the Trust Homestead Transfers is avoidable; (ii) determining that the Trust Homestead Transfer is recoverable; (iii) requiring Gemma Morera to return the Trust

Homestead Transfer to the Trustee plus post judgment interest; and (iv) granting such other relief that is just and proper.

**COUNT XII –**
**AVOID AND RECOVER FRAUDULENT ASSET CONVERSION**
**11 U.S.C. §§ 544 and 550 and Fla. Stat. § 222.30**
**(Against Gemma Morera and Jorge Morera for the Trust Homestead Transfer)**

132.    Plaintiff re-alleges and repeats paragraphs 1 through 33, 40 through 43, 50 through 56, 61 and 62 as if fully set forth herein.

133.    This is an action to avoid and recover a fraudulent asset conversion under Sections 544 and 550 of the Bankruptcy Code and pursuant to Section 222.30 the Florida Statutes.

134.    The Trustee may avoid the Trust Homestead Transfer as a fraudulent asset conversion pursuant to Fla. Stat. § 222.30 because it was made with the actual intent to hinder, delay or defraud the Debtor's creditors.

135.    The Debtor's actual intent to hinder, delay or defraud his creditors is evidenced, by among other things:

(a)    the Trust Homestead Transfer was for the benefit of an insider;

(b)    the Debtor retained custody and control of the Homestead after the Trust Homestead Transfer;

(c)    prior to the Trust Homestead Transfer the Debtor had been threatened with litigation by his many creditors;

(d)    the Debtor was insolvent at the time that the Trust Homestead Transfer was made; and

(e)    the Trust Homestead Transfer occurred shortly before or shortly after a substantial debt was incurred.

136.    To the extent the Trust Homestead Transfer is avoided under Section 544 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or the value of such property, from the Debtor and Gemma who are either the initial transferees of the Trust Homestead Transfer, the people for whose benefit the Trust Homestead Transfer was made, or the immediate or mediate transferees of the initial transferee.

WHEREFORE, the Trustee requests the entry of a judgment as follows: (i) determining that the Trust Homestead Transfer is a fraudulent asset conversion; (ii) determining the Homestead is not exempt by Florida's homestead exemption or tenancy by the entireties laws; (iii) determining that the Trust Homestead Transfer is avoidable by the Trustee; (iv) determining that the Trust Homestead Transfer is recoverable by the Trustee; (v) requiring the Debtor and Gemma to turn over the Homestead to the Trustee; and (vi) granting such other and further relief that is just and proper.

**COUNT XIII –**
**OBJECTION TO DEBTOR'S HOMESTEAD EXEMPTION**
**11 U.S.C. § 522(o)(4)**
**(Against Jorge Morera and Gemma Morera)**

137.    Plaintiff re-alleges and repeats paragraphs 1 through 33, 40 through 43, 50 through 56, 61 and 62 as if fully set forth herein.

138.    This is an action pursuant to 11 U.S.C. § 522(o) objecting to the Debtor's and Gemma's homestead exemptions.

139.    The Debtor and Gemma are claiming a homestead exemption for the Homestead.

140.    Gemma is a dependant of the Debtor.

141.    The value of the exemption on the Homestead claimed by the Debtor and Gemma must be reduced by the Amount of the Trust Homestead Transfer which was made by the Debtor to pay down the equity line of credit on the Homestead with the actual intent to hinder, delay or defraud his creditors.

142.    The Debtor's intent to defraud his creditors is evidenced, by among other things:

(a)     the Trust Homestead Transfer was for the benefit of an insider;

(b)     the Debtor retained custody and control of the Homestead after the Trust Homestead Transfer;

(c)     prior to the Trust Homestead Transfer the Debtor had been threatened with litigation by his many creditors;

(d)     the Debtor was insolvent at the time that the Trust Homestead Transfer was made; and

(e)     the Trust Homestead Transfer occurred shortly before or shortly after a substantial debt was incurred.

143.    The Trust Homestead Transfer was not subject to an exemption at the time that the transfer was made.

WHEREFORE, the Trustee respectfully requests the entry of judgment as follows: (i) sustaining the Trustee's objection; (ii) reducing the Debtor's homestead exemption by the amount of the Trust Homestead Transfer; (iii) reducing the amount of the Gemma's homestead exemption by the amount of the Trust Homestead Transfer; (iv) determining that the equity available in the Homestead is not exempt to the extent of the Trust Homestead Transfer; (v) directing the Debtor and Gemma to turn over the Homestead to the Trustee; and (vi) granting such other and further relief that is just and proper.

**COUNT XIV -**
**ACTION TO IMPOSE AN EQUITABLE LIEN**
**AGAINST THE HOMESTEAD**
**(Against Jorge Morera and Gemma Morera)**

144.    Plaintiff re-alleges and repeats paragraphs 1 through 62 as if fully set forth herein.

145.    This is an action seeking to impose an equitable lien against the Homestead.

146.    The Debtor paid down his equity line of credit on his Homestead with the intent to hinder, delay or defraud his creditors by taking his substantial tax refunds and transferring them, by the Homestead Transfers and the Trust Homestead Transfer, into an exempt asset to keep his money out the reach of his numerous creditors.

147.    Gemma was unjustly enriched by the Debtor's fraud and should not stand to gain from the Debtor's actions.

WHEREFORE, the Trustee respectfully requests the entry of a judgment (i) imposing an equitable lien on the Homestead in the amount of the TBE Homestead Transfers and the Trust Homestead Transfer; (ii) foreclosing the Estate's equitable lien in the Homestead; (iii) providing that the Estate may sell the Homestead through a public auction; and (iv) granting such other and further relief that is just and proper.

**COUNT XV -**
**OBJECTION TO TENANCY BY THE ENTIRETIES EXEMPTION**
**FOR THE HOMESTEAD AND THE MORERA LIVING TRUST**
**(Against Gemma Morera and Jorge Morera)**

148.    Plaintiff re-alleges and repeats paragraphs 1 through 62 as if fully set forth herein.

149.    This is an action objecting to the Debtor's exemption of the Homestead and the Trust as tenancy by the entireties.

150.    The Debtor's Bankruptcy Schedule C reflects a tenancy by the entireties exemption for the Homestead and the Trust.

151.    The property and assets which are contained in the Trust result from the Trust Transfers, which are fraudulent asset conversions and fraudulent transfers that are avoidable and recoverable by the Trustee.

152.    Additionally, the equity that remains in the Homestead results from the Homestead Transfers and the Trust Homestead Transfer, which are fraudulent asset conversions and fraudulent transfers which are avoidable and recoverable by the Trustee.

153.    Accordingly, the Court should sustain the Trustee's objection to the Debtor's exemption of the Homestead and the Trust as tenancy by the entireties.

WHEREFORE, the Trustee respectfully requests the entry of a judgment as follows: (i) sustaining the Trustee's objection to the Debtor's tenancy by the entireties exemption of the Homestead; (ii) sustaining the Trustee's objection to the Debtor's tenancy by the entireties exemption of the Trust; and (iii) granting such other and further relief that is just and proper.

### COUNT XVI -
### OBJECTION TO THE DEBTOR'S PERSONAL PROPERTY EXEMPTION PURSUANT TO ARTICLE X § 4(a)(2)
### (Against Jorge Morera)

154.    Plaintiff re-alleges and repeats paragraphs 1 through 23 and 62 as if fully set forth herein.

155.    The Debtor has scheduled a 50% interest in the personal household property listed on his Bankruptcy Schedule B.

156.    The Trustee conducted an appraisal of the Debtor's household property scheduled on Bankruptcy Schedule B which valued the personal household property in the total amount of $12,045.00.

157.    The value of the Debtor's 50% interest in the personal household property listed on Schedule B is $6,022.50.

158.    Pursuant to Article X § 4(a)(2) of the Florida Constitution the Debtor is only entitled to a $1,000 exemption for all of his personal property.

159.    Accordingly, the Debtor owns and is in possession of $5,022.50 worth of personal household property which is not subject to an exemption under Florida law.

WHEREFORE, the Trustee respectfully requests the entry of a judgment: (i) sustaining the Debtor's exemption of his personal household property to the extent that the Debtor's household personal property exceeds a value of $1,000; (ii) ordering the Debtor to turn over the

personal household property to the Trustee or repurchase same; and (iii) granting such other and further relief that is just and proper.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Respectfully submitted,

Bast Amron LLP
*Counsel for Marcia T. Dunn,*
*Chapter 7 Trustee*
SunTrust International Center
One Southeast Third Avenue,
Suite 1440
Miami, Florida  33131
Telephone:  305.379.7904
Facsimile:   305.379.7905

By:  */s/ Morgan B. Edelboim* _____
        Brett M. Amron, Esq.
        Florida Bar No. 148342
        Morgan B. Edelboim, Esq.
        Florida Bar No. 040955

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system where available, and/or via U.S. Mail as indicated upon the parties listed on the attached service list on this the 24th day of August, 2012.

*/s/ Morgan B. Edelboim* _____

## <u>SERVICE LIST</u>

**Jorge Morera**
1445 Palancia Ave
Miami, FL 33146

**Gemma Morera**
1445 Palancia Ave
Miami, FL 33146

**Morera Living Trust**
c/o Jorge Morera & Gemma Morera
1445 Palancia Ave.
Miami, FL 33146